R. B. LONGMIRE v H. C. HERNDON, Ex'r.

If an answer to a bill in equity, filed before the adoption of the Code of Civil Procedure, be directly responsive to the material facts charged in the bill, and be clear, positive and precise in its denial of them, and be not disproved or discredited in this part, by what is found in any other part of it, *it is evidence for the defendant.* But if the answer is defective in these requirements, and there is a replication, the rule does not apply.

A guardian, who, on the 20th December, 1862, collected on a well secured, *ante* war guardian note, $3,000 and invested the same for the benefit of his ward in seven-thirty Confederate bonds, as he also did a large amount of his own funds, is not guilty of such laches as to render him liable for the amount.

(The cases of *Hughes* v. *Blackwell*, 6 Jones Eq. 73; *Speight* v. *Speight*, 2 Dev. & Bat. 280; *Thompson* v. *Mills*, 4 Ired. Eq. 390; *Woodall* v. *Privett*, Busb. Eq. 198, cited and approved; and *Purser* v. *Simpson*, 65 N. C. Rep. 497; *Cummings* v. *Mebane*, 63 N. C. Rep. 315; *Shipp* v. *Hetrick*, Ibid, 329; *Larkins* v. *Murphy*, 71 N. C. Rep. 560, and *Emmerson* v. *Mallett*, Phil. 69, cited, distinguished from this, and approved.)

This was a BILL IN EQUITY, filed in 1868, and heard before *Watts, J.*, upon exceptions to the report of the referee at the Spring Term, 1874, of the Superior Court of GRANVILLE county.

The original bill was filed by the plaintiff against D. C. Herndon, the testator of the defendant and the plaintiff's guardian, for an account and settlement of the guardianship. During the progress of the cause, it was referred to a commissioner to state the account, which was done, both parties filing exceptions to certain items contained in his report.

The cause was then referred to J. J. Davis, Esq., who filed his report Spring Term, 1873, when the parties again filed exceptions. Upon the hearing his Honor sustained some of the exceptions and overruled others. From this ruling of his Honor, both parties appealed.

All the exceptions, except two, were abandoned upon the argument in this Court. These are fully set out, with the facts relating thereto, in the opinion of the Court.

*Lanier*, for the plaintiff.
*Attorney General Hargrove*, *W. A. Graham* and *Busbee & Busbee*, for the defendant.

BYNUM, J. This is a suit in equity, instituted before the adoption of the present Constitution, which abolished the distinction between actions of law and suits in equity, and it is to be determined according to the principles and practice, as they existed in the Courts of equity.

The case is here by appeal from the rulings of the Court below, upon exceptions filed by the defendant to the report of the commissioner to take an account of the estate in the hands of the guardian. In this Court but two of the exceptions taken below are relied on or pressed by the counsel.

The first exception relied on, is " that no credit is allowed the guardian for an investment in " seven-thirty " Confederate bonds to the amount of $6,800 with moneys of the ward's estate, received in December, 1862, and February, 1863, and so invested soon thereafter." The only evidence to establish this alleged investment is the deposition of J. C. Taylor. His testimony is that in 1849 he executed a guardian bond to the defendant for the sum of $1500, and that in December, 1862, paid on said note at his own request $2000 in Confederate interest-bearing notes, and that in February, 1863, he paid the balance on said note, in Confederate money, which balance the report finds to have been $224. So there is a failure of proof as to the residue of the $6,800 investment, after deducting the sums paid by Taylor. But the defendant insists that his answer to the bill is evidence for him to establish the investment of the whole $6,800, because, he says that in a Court of Equity, when the answer is responsive to the direct allegations and interrogatories of the bill, as to this particular

investment, the rule is that the answer is evidence for him, and that being uncontradicted, it must be taken as true. The true rule seems to be this: If an answer be directly responsive to the material facts charged in the bill, and be clear, positive and precise in its denial of them, and be not proved or discredited in this part, by what is found in any other part of it, it is evidence for the defendant. But if the answer is defective in these requirements, and there is a replication, the rule does not apply. *Hughes* v. *Blackwell*, 6 Jones' Eq., 73; *Speight* v. *Speight*, 2 Dev. and Bat. 280.

The answer to be received as evidence must not be drawn for the sole benefit of the defendant, but must disclose the truth and justice of the case, by setting forth, without any evasion or concealment, a full and fair discovery of all matters within his knowledge or in his power to discover, nor must it keep back information in his possession upon a material fact upon which the right to recover, may depend. *Thompson* v. *Mills*, 4 Ired. Eq., 300. If the answer fails to meet these requirements the plaintiff, by his replication, takes issue upon all the new matters of defence or avoidance, alleged in the answer, and the defendant is put to the proof. *Woodall* v. *Privett*, Busb. Eq. 199; *Lyerly* v. *Wheeler*, 3 Ired. Eq. 479.

Apply these principles to our case. The defendant seeks to discharge himself of this $6,800 investment, and it was material to the plaintiffs equity, to know the true character and source of this contested item, and to that end, specific allegations and interrogatories were submitted to the defendant. Assuming that the door was thus opened for him to discharge himself by answer, he does not meet the occasion. The answer is clearly evasive, irresponsive and unsatisfactory, in this, that it omits to state the material facts within his own knowledge, that the money received by the defendant and invested in Confederate bonds, was received in discharge of good anti-war bonds, and in the further fact, that it states the amount paid by Taylor, to have been at one time $4,000, and at another $1,600, when in truth, it was $3,000 at one time and $224 at

another, as deposed to by Taylor and found by the referee. So in regard to the $1,200 which is a part of the said investment, the answer is silent as to the source from which it was received, and whether upon an old or a Confederate debt. The answer, therefore, is wholly irresponsive and insufficient as to the true character of this much contested investment, and in the particulars wherein the defendant had a certain personal knowledge. The answer, then, cannot be invoked in discharge or avoidance, as to the $6,800 investment, or any part thereof. The next position of the defendant is, that if he is not discharged of the whole amount by his own answer, he is discharged as to a part of it, by the evidence of Taylor, who proves the payment of $3,000 in Confederate seven-thirty bonds, on the 20th December, 1862. We must put out of the case the $224, the balance paid by Taylor two months later, in discharge of the guardian note, as that sum was paid in Confederate money, and there is no evidence outside of the answer, which traces it into this $6,800 investment. The sole question then presented by this exception is whether a guardian who on the 20th December, 1862, received in Confederate currency, $3,000 on a well secured ante-war guardian note, (when prudent business men in his county received such currency in discharge of old debts) and invested the money in " seven thirty " Confederate bonds, for the benefit of the ward, which bonds afterwards became worthless, by the result of the war, is to be held liable therefor ? For the referee finds as a fact, that at the time the guardian received these interest bearing Confederate notes, prudent and good business men, acted in the same way and received the money at par, in discharge of all old debts. The evidence not only supports this finding, but also shows that the defendant invested largely of his own funds in the same way. In *Purser* v. *Simpson*, 65 N. C. Rep. 497, it was held to be *laches* in a guardian, to collect a well secured ante-war note, in Confederate currency in September and October, 1863, when there was no need for its collection, and that after the 4th July, 1863, no fiduciary agent, ought to

have collected such securities and invested in Confederate bonds. In *Cummings* v. *Mebane*, 63 N. C. Rep. 315, it is held not to be imprudent in a guardian to receive Confederate money in December, 1862, from a debtor of his ward, who was about to leave the State. And in *Shipp* v. *Hetrick*, 63 N. C. Rep. 329, the rule of diligence in such trustees, is declared to be that of a prudent man, in managing his own affairs. The latest case decided in this Court, is that of *Larkin* v. *Murphy*, 71 N. C. Rep. 360, where it is said : " We have found it impossible to lay down any rule to govern all cases, as to the liability of administrators and other fiduciaries who received depreciated Confederate currency. The nearest we could come to it, was to say, that it might be received before 1863, and not after, and that 1863 was debateable ground. *Emmerson* v. *Mallett*, Phil. 69. Every case must to a considerable extent be judged by its own surroundings."

In our case the guardian received the money in 1862 ; in doing so, he acted as prudent men act in managing their own affairs, and as he acted in dealing with his own estate. He kept the bonds as the trust fund of his ward, because he could not safely invest otherwise, and there is no evidence of a want of integrity or good faith. It is unnecessary to advert to the anomolous political condition of the country, at that time, or to the almost irresistable purpose, brought to bear upon all our citizens, to make Confederate money, the universal currency of the country, to be received by all, without doubt or hesitation.

This exception is sustained to the extent of $3,000.

The second exception relied on, is that as the guardian made a tender of the Confederate bonds and other effects of the ward in March, 1865, which were not accepted, no interest should be charged against the defendant, after that date.

We have just seen that the ward ought not to have received the bonds as tendered, as the larger part of them is chargeable to the defendant. If such a tender as the one alleged here, was valid, it would be a short way to the settlement of complicated estates. This exception is disallowed. All the other

exceptions are disallowed, except the one herein before allowed in part. It will be referred to the Clerk of this Court, to reform the report in conformity to this opinion, and a decree will be made according to the report as reformed. An allowance of $—— is made to the Clerk for reforming the report.

PER CURIAM.                        Judgment accordingly.