ARTEMUS McNAIR and others v. J. T. POPE and another.

*Parol Trust; quantum of proof to establish.*

1. Where land is purchased at an execution sale, or a sale under a deed of trust, under an oral agreement with the debtor whose land is sold, that he shall be allowed to redeem, a valid trust is created which will be enforced. But to engraft such a trust upon the legal title the proof must be strong and convincing.

2. Under our former practice, an equity could not be set up in opposition to a positive denial, unless supported by more than one witness. While this rule no longer holds, it affords an analogy as to the *quantum* of proof, necessary to establish the existence of a denied equity.

3. Where the only evidence offered to support an alleged trust is, that the land in question was purchased by the alleged trustee at a price somewhat below its value, and the alleged trustee positively denies the existence of such trust in his sworn answer; *Held*, that such evidence was wholly insufficient to establish the trust, and, defendant having demurred to such evidence, the Court properly instructed the jury to respond in the negative to an issue as to the existence of the trust.

CIVIL ACTION, tried before *Clark, J.,* and a jury, at January Term, 1887, of ROBESON Superior Court.

Duncan McNair being indebted to John McCallum in a considerable sum, for which he had given his notes to assure and provide for the payment thereof, on January 20th, 1869,

conveyed by deed of mortgage to the latter three several tracts of land, containing in the aggregate more than eleven hundred acres, and conferring a right to sell in case the debts were not paid on or before the first day of January, 1874. Early in the year 1871, the said McCallum died, having made a will, wherein he appoints Alexander McRae and John McRae executors, who, after proving the will, accepted the trusts and took the prescribed oaths as such.

The will vests no power in the executors to dispose of the real estate of their testator, notwithstanding which they assumed to exercise the authority conferred in the mortgage, and undertook to sell the lands therein mentioned. The sale was accordingly made on the 9th day of March, 1875, at which the defendants became the purchasers at the price of $3,092.18, the amount due on the secured debts, and a deed was executed to them by the executors. On the 18th day of April, 1876, Duncan McNair himself executed a deed to the defendants, conveying all his estate and interest in the lands, for the same alleged consideration as that mentioned in the deed of the executors, increased by the amount some over six hundred dollars, due from two of the sons of Duncan McNair to the defendants, and assumed by him. The previous sales by the executors are therein mentioned and recognized, and the sum paid them recited, as, with the additional amount specified, the consideration of his confirming the deed. Duncan McNair thereafter died intestate, and the plaintiffs, who are his children and heirs at law, on the 19th day of March, 1885, instituted this action to charge the lands so held by the defendants, with a trust for redemption, growing out of an understanding and agreement made between the parties at the time, by which it is alleged, that upon the repayment to the defendants of the moneys so due by their ancestor, the lands should be reconveyed to him. The complaint, after stating the making the several deeds mentioned, alleges that the lands were so bought by the defendants and the title se-

cured to them, under an express agreement, that they might be redeemed on the payment of the moneys due, and as set out in the deed of April 18th, 1876, and that all the debts assumed by their father and due from two of them, as well as a large part of the debt due to the testator and discharged by the payment made to the executors by the defendants, have been paid to the defendants during the life-time of the said Duncan McNair.

The complaint further alleges, that the lands were of great value at the time—worth $12,000; that their ancestor remained afterwards, as before, in the possession and use of the land up to his death, as have the plaintiffs since.

The relief demanded is the enforcement of the parol trust, and the taking of the necessary accounts preliminary thereto.

The defendants deny explicitly that any agreement was made between them and the said Duncan, by which he was to be allowed to redeem, and aver that he was present at the sale by the executors, and neither then nor afterwards expressed any dissatisfaction with what was done, or asserted any claim to redeem the premises. They further answer, in reference to the continued use and occupation of the premises, that it was under a contract of lease, for which rent was paid to them; and they deny that any advantage was taken or fraud practiced by themselves on the deceased, in securing his deed of release and confirmation of the executors' sale.

Two issues were submitted to the jury, as follows:

1. Did the defendants buy under an agreement with Duncan McNair, that they would hold the land only for the purpose of securing the purchase money?

2. Was the deed of April 18th, 1876, fraudulent and void?

The issues, under the charge of the Court, were responded to in the negative.

Upon the trial, and to show the great inadequacy of price purporting to have been paid for the lands in the deed from McNair to the defendants in 1876, the plaintiffs introduced,

as a witness, one D. Sinclair, a physician of thirty years' practice, who knew the lands and estimated their value in 1876 at eight or ten dollars an acre. He said that he knew of the sale by the executors in 1875, which had been advertised at two or more places in the neighborhood, and that it was generally thought to be a fair sale; lands were then low, and he did not know why more was not bid.

The residue of the testimony offered by the plaintiffs (the defendants introducing none), was as follows:

W. H. Graham introduced by plaintiffs: Knew the land; had known it for more than twenty years; lived for that length of time in a mile of the land. In his opinion the land was not worth more than $5,000; don't think in 1876 that the land would have brought more than five dollars per acre; might not have brought that; four or five dollars per acre was, in his opinion, all it was worth in 1876; wouldn't say that it would have brought five dollars at a fair sale in 1876; might have brought less.

J. B. Rowland, introduced for plaintiff, testified: In his opinion the land would not have brought more than seven dollars in 1876; certain it would not have brought more than seven; it might have been put up at fair sale in 1876, and brought a great deal less than seven; all he meant to say was, that it would not have brought *more* than seven.

The defendants demurred to the evidence, as insufficient to warrant any findings in favor of the plaintiffs upon the issues; and the Court being of opinion that there was none, so instructed the jury, and they answered the inquiries put to them in the negative.

To this ruling the plaintiffs excepted, and from the judgment, rendered on the verdict, appealed.

*Mr. T. A. McNeil*, for the plaintiffs.
*Messrs. D. H. McLean* and *W. F. French*, for the defendants.

Smith, C. J., (after stating the facts). In *Mulholland* v. *York*, 82 N. C., 510, it is held, that where one purchases land at an execution sale, under a verbal agreement with the debtor whose land is sold, that he shall be allowed to redeem on payment of the purchase money, a valid trust is created between the parties which will be enforced, and the authorities are, in the opinion, freely examined and discussed, and the reasons in support of the principle stated. The same rule is held applicable to a sale under a deed in trust of the debtor's land, in *Tankard* v. *Tankard*, 84 N. C., 286, and is affirmed generally in *McLeod* v. *Bullard*, Ibid., 515; *Cheek* v. *Watson*, 85 N. C., 195; *Gidney* v. *Moore*, 86 N. C., 484, and other cases.

But to engraft such a trust upon the legal estate, the proof of its formation should be strong and convincing; and such is not the case now presented. It is expressly controverted in the answer, coming from the very persons who were parties to the alleged agreement, and must be cognizant of all the facts that transpired at the sale. Under our former practice an equity could not be set up in opposition to a positive denial, unless supported by more than the testimony of a single witness, and the Court, in such case, would refuse to interfere. *Gaither* v. *Caldwell*, 1 D. &. B. Eq., 504; *Speight* v. *Speight*, 2 D & B. Eq., 280; *Hill* v. *Williams*, 6 Jones Eq., 242; *Longmire* v. *Herndon*, 72 N. C., 629. While the rule does not now prevail, it affords an analogy in the quality of the proof, and its sufficiency to set up and establish a denied equity, when the controversy is about its existence. There is, indeed, no evidence of it furnished in the pleadings, and as little in the testimony of the witnesses. The most that is proved is, that the lands were bought at a price somewhat below their real value, and this fact is wholly insufficient to show any agreement upon which the trust can be raised, and the Court properly instructed the jury, in deference to which, the verdict was rendered. The *quantum* of evidence

required to set up the equity was wholly inadequate, under the rule in which relief was granted in the superceded Courts of Equity, whose principles however remain, and there is no error in the ruling.   The judgment is affirmed. *Ely* v. *Early*, 94 N. C., 1.

No error.                                          Affirmed.