MARY ANN SUMMERLIN v. CALVIN J. COWLES et al.

*Fraud—Trust—Statute of Limitations—Presumption—Married Women—Evidence.*

1. More proof than a mere preponderance of evidence is necessary to warrant the Courts in attaching a parol trust to a legal estate, or to convert a deed, absolute upon its face, into a security.

2. To such a cause of action, arising prior to the adoption of the existing statutes of limitations, there was no time prescribed as a bar, but the ten years statute of presumption—Rev. Code, chap. 65, § 19—is applicable.

3. While there is no saving provision in favor of women under disability of coverture contained in the statute—Rev. Code, chap. 65, § 19—raising a presumption of an abandonment of equitable interests after the lapse of ten years, yet when the period there prescribed is adopted by the Courts in the exercise of their equitable jurisdiction, as the one in which the action must be brought by analogy to the general statutes of limitations, the time during which such disability existed will not be computed.

This is a CIVIL ACTION, which was tried before *Clark, J.,* at Spring Term, 1888, of WILKES Superior Court.

John C. Hamby, in the year 1852, conveyed the tract of land described in the complaint, and containing about one hundred acres, to Jesse C. Summerlin, then the plaintiff's husband, from whom, under an execution sale and the Sheriff's deed, the defendant claims to derive his title. The complaint alleges that the grantor, an old and illiterate man, intending to convey the land to the plaintiff, his daughter, directed Griffin Summerlin, her husband's father, so to draw the deed; but by a fraudulent contrivance, the conveyance was made to the said Jesse C., and executed by the said John C., who could neither read nor write, under representations that it was made as he had directed.

The purpose of the present suit, begun on the 26th day of August, 1885, is to have the deed declared fraudulent and

the defendant to hold as trustee for the plaintiff, so as to effectuate the intention of the maker thereof.

The answer, in reference to the various allegations of the complaint, says the defendant who bought the land has no knowledge or information upon which to form a belief as to the truth of those statements, and therefore puts the plaintiff upon proof.

The single issue submitted to the jury was as follows:

"Was the deed from J. C. Hamby to Jesse Summerlin intended by the grantor Hamby to be a deed to the plaintiff, but made to the said Jesse Summerlin by the fraud of the said Jesse and his father, Griffin Summerlin?"

Upon the trial it appeared in evidence that the defendant, after receiving the deed from the Sheriff, in 1854, entered into possession and held the land for one or two years, since which it remained vacant until the plaintiff's entry thereon some three years before the trial, and she has continued in the occupation.

The plaintiff proved by her own testimony that she was the daughter of J. C. Hamby and the widow of Jesse Summerlin, and that Jesse was the son of Griffin Summerlin; that her father was illiterate, could neither read nor write, and that she could neither read nor write; that Jesse died in July, 1879, and that she took possession of the land in controversy about three years ago; that she was at the house of her father in 1852, when the deed from him to Jesse Summerlin was written; that her father was there, and also one James Byers, and that her husband and his father came to her father together. [Here, upon objection by defendant, and the ruling of the Court, she was not allowed to speak of any transaction that took place or any communication made to her or direction given by her father, witness having participated therein.]

The plaintiff then called James Byers, who testified that he was at the house of J. C. Hamby on the occasion spoken

of; that the plaintiff and her father were there; that Jesse Summerlin and his father came in; that soon after they came Griffin Summerlin said to Hamby, " I have come to do that writing." Hamby replied that he wanted a deed written to the plaintiff for the land in controversy; that he did not want Jesse's name in it, and did not want it made so it would be liable for Jesse's debts, if it was it would soon be gone. To this Griffin Summerlin replied that he knew how to write it; that paper and ink were gotten and they were about writing the deed when he left.

Austin Yates testified that he was at Hamby's some time before the making of the deed in 1852 to Jesse Summerlin, and wanted to buy the land in controversy, when Hamby told him he would not sell it to him or any one else; that he intended his land for his two children.

N. P. Cardwell testified that he lived a near neighbor to old man Hamby, and on several occasions before the date of the deed to Jesse Summerlin Hamby told him that he intended to give his home place to his son James Hamby and the lands in controversy to his daughter Mary, the plaintiff in this action; that he intended to make a deed for it to his daughter so it would not be liable for Jesse Summerlin's debts, as it would soon be gone if he was to make it to him; that Hamby was a very old man in 1852, and could neither read nor write; that he afterwards did give the home place to his son James.

The defendant then introduced the deed of 1852 from J. C. Hamby to Jesse Summerlin, witnessed by Griffin Summerlin and Amos Church, and registered in 1853 upon the jurat of Amos Church. The defendant then showed four judgments on the execution dockets of the old County Court of Wilkes, for the year 1853, and then offered in evidence the Sheriff's deed, dated March, 1854, reciting that he sold under *ven. ex.* in his hands issuing on the four judgments above mentioned.

There was other testimony introduced, but it is not material to the questions considered in the opinion.

The defence was two-fold:

1. That there was no sufficient evidence offered, as the law requires, to warrant the finding of the jury; and

2. The action is barred by the lapse of time.

The jury found the issue in favor of the plaintiff, but the Court being of opinion that, upon the facts proved the plaintiff was not entitled to recover, rendered judgment for the defendants, and the plaintiff appealed.

*Mr. D. M. Furches*, for the plaintiff.
*Mr. C. H. Armfield*, for the defendants.

SMITH, C. J.    While to attach a trust to a legal estate by parol, or to convert a deed absolute in form into a security merely, and perhaps in other cases invoking the exercise of equitable judicial functions for relief, more proof is required than that which preponderates and governs in the trial of ordinary questions of .fact, as held in *Ely* v. *Early*, 94 N. C., 1; *Smiley* v. *Pearce*, 98 N. C., 185, and in numerous other cases, we think the evidence of the fraud in procuring the deed to be falsely drawn, fully meets the requirements of the rule.

While the plaintiff was not permitted to relate what passed between her father and her husband's father, at the time of the drawing and executing the deed, a witness, one James Byers, who was present, testified that he heard the said John C., when the said Griffin announced his readiness to write the deed, say " he wanted a deed written to the plaintiff for the land in controversy; that he did not want Jesse's name in it, and did not want it made so it would be liable for Jesse's debts; if it was, it would soon be gone, and

that to this Griffin Summerlin replied that he knew how to write it, and that paper and ink were gotten, and they were about writing the deed when he left."

This found corroborative support in proved antecedent declarations of the donor's intention thus to provide for his daughter, and in subsequent declarations of what he understood he had done in carrying out his purpose.

If this evidence be accepted as true by the jury, it afforded full warrant for their conclusion that a false instrument was palmed upon the old man, and his credulity imposed on in executing the deed that was in fact made.

The second objection, resting upon the delay in bringing the suit after the plaintiff's liberation from the disability of coverture, is more serious and difficult.

The defendant, in his first answer, alleges, as a bar to the action, the lapse of *ten years*, and in his amended answer the lapse of *seven years* since it occurred, referring, we suppose, to the limitations prescribed in *The Code*, §§ 153 and 158. These enactments do not apply, since the present cause of action originated in the false and fraudulent substitution of the *deed in fact made* in place of that *intended by the donor, and which he supposed he was making,* and hence comes under the limitations, if there be such, applicable of the previous law, as declared in section 136.

If it were otherwise, and the present enactment applied, the defence would be unavailable, since the statute did not begin to run against the plaintiff while under disability (sec. 163, par. 4), and as this was removed by her husband's death in July, 1879, the shorter period of *seven years* had not passed when the action was begun in August, 1885.

The former limitations were put alone upon the different forms of actions at law, yet, in analogy, the same limitations, according to the subject matter, were recognized and enforced when the remedy was sought in a Court of Equity, with the

like reservations in favor of persons under disability. *Thompson* v. *Blair*, 3 Murph., 583; *Falls* v. *Torrence*, 4 Hawks, 412; *Leggett* v. *Coffield*, 5 Jones Eq., 382.

As the present suit belongs to the equitable jurisdiction of the Court, and any analogy to be found in the statute determining the periods within which legal remedies must be pursued or rights lost upon a presumption of abandonment, must be, we think, traced to the provision which raises a presumption of abandonment—Rev. Code, chap. 65, § 19—after an inaction, unexplained and not rebutted, for the space of ten years. While the operation of this statute is not suspended because of the coverture of one against whom it runs, notwithstanding the disability as decided in *Johnson* v. *England*, 4 D. & B., 70; *Headen* v. *Womack*, 88 N. C., 468; *Houck* v. *Adams*, 98 N. C., 519, yet, when adopted as a measure of time in which an action must be brought, it must, by reason of the same analogy, be accompanied with the qualification attaching to *all limitations*, and mentioned·in section 9 preceding.

This section contains a general saving as to all the statutory limitations, except when penalties are sought to be recovered in favor of any person who, at the time of the accruing of the cause of action, is " within the age of twenty-one years, *feme covert, non compos mentis,*" &c , reserves to such the right to bring the same action within the times as before limited,. " after his coming to or being of full age, discovert, of sound memory," &c., "as other persons having no such impediment might have done."

If a statutory limitation can be deduced from the effect as evidence to which is given the force of a presumption of abandonment, and placed as an obstruction in the way of the plaintiff's action, it should be in subordination to the conditions which are annexed and incident to limitations, whenever any as such are prescribed.

But aside from these suggestions, the defendant relies on his averment—first, that ten, and then that seven years have

elapsed since the plaintiff's cause of action accrued and before she began—allegations literally true, but which are met by the fact that, during all this period, except a month more than six years, she was laboring under a disability recognizing the former, as well as the present limitation, which arrested the running of the statute at the start, and which, when set in operation, did not run even for the shorter time before she commenced her suit.

The defence therefore fails, and the Court erred in ruling to the contrary. The judgment is reversed, and a new trial must be had in the Court below; and so it is adjudged.

Error.