SHIREY *v.* BEARD.

Opinion delivered October 17, 1896.

SETTLEMENT—CONCLUSIVENESS—Where the land of A was sold under the decree of a court, and was purchased by, and conveyed to, B, and A remained in possession, and a controversy afterwards arose between them as to the manner in which the purchase was made, A claiming that it was purchased for him and B that it was purchased solely for himself, and they afterwards settled the controversy by B selling the land to A and taking two notes for purchase money, A cannot subsequently reopen the controversy and defeat the recovery of the balance due on the notes by showing that he executed them in order to hold possession of the land.

Appeal from Craighead Circuit Court, Jonesboro District.

T. P. McGOVERN, Special Judge.

*J. C. Hawthorne,* for appellant.

Defendant is not entitled to rescissions of the contract because—

1. If there ever was any trust relationship, it was dissolved and repudiated by plaintiff more than a year before the sale of the land, and it is not contended that defendant agreed to pay more than the land was worth, or that he was in any manner deceived by defendant or forced him to make the trade.

2. Defendant was in possession of all the facts when the trade was made, and he delayed making any objections to it for more than seven years. 20 Am. St. 237; 16 *id.* 237; 7 Johns. Ch. 90; 9 Pick. 212; 3 Paige, Ch. 274; 33 Am. St. 258; 120 U. S. 377; 52 Ark. 76.

*Jno. K. Gibson* and *Cate, Hughes & Cate,* for appellee.

1. Upon the purchase of the land by Shirey and the taking of the title in his own name, a trust arose in

Beard's favor. 20 Ark. 381; 26 *id*. 344; *Ib*. 249; 42 *id*. 531; 49 *id*. 242; 16 Pac. 57; Bisph. Eq. (4 Ed.) sec. 93; 10 Am. & Eng. Enc. Law, pp. 73, 75 and notes. This trust may be established by parol evidence. 39 Ark. 309.

2. It is true, equity will not enforce a stale trust, but the time depends upon the circumstances of the case, and no certain time can be stated as the limit. 1 Perry, Trusts, (3 Ed.) sec. 228 *et seq.;* Bisph. Eq. (4 Ed.) sec. 260. Appellee's age and ignorance, his confidence in appellant, and the circumstances of oppression and fraud explain the delay, and demand the interference of a court of equity. The burden was on the trustee to show the fairness of the transaction. 41 Ark. 264; Bisph. Eq. (4 Ed.) sec. 143; 1 Perry, Trusts, (3 Ed.) secs. 195, 206, 428 *et seq.*; 27 Am. & Eng. Enc. Law, p. 213.

BATTLE, J. On the 15th of June, 1893, A. W. Shirey instituted an action against Calvin Beard, and alleged in his complaint that he was, on the 31st day of May, 1886, the owner of a certain tract of land, which he described; that he sold it on that day to the defendant for $500, for which the defendant executed to him his two promissory notes, each for $250, payable, respectively, eight and twenty months after date, and bearing ten per cent. per annum interest; that the note last falling due remained unpaid; and that the defendant was further indebted to him in the sum of one hundred and fifteen dollars for goods, wares, and merchandise sold and delivered to him. And, tendering with his complaint a deed of conveyance of the land to the defendant, he asked for a judgment against the defendant for the amount of his indebtedness, and a decree foreclosing the lien on the land for the purchase money remaining unpaid.

The defendant answered, and alleged that he owned the land in 1877, subject to a vendor's lien, which was

ordered to be foreclosed in 1884; that he employed the plaintiff to purchase it for him at the sale under the decree of foreclosure, and paid him $60 therefor; that the plaintiff, in pursuance of the agreement, purchased the land, on the 19th of April, 1884, in his own name for the benefit of the defendant, with the understanding that the land was to be conveyed to him when he paid to plaintiff the purchase money.

The defendant admitted the execution of the note sued on, but alleged that he had paid the plaintiff $1,000 more than he owed on account and for the purchase money of the land ; that the plaintiff was indebted to him in the sum of $747.60; and asked judgment against plaintiff for $500, and that plaintiff be required to convey the land to him.

Plaintiff replied, and denied that the defendant paid him $60 for purchasing the land, that he held it as trustee, that the purchase money had been paid, and that he was indebted to the defendant in any sum.

Plaintiff testified that the defendant informed him that he was about to lose the land in controversy, and proposed to pay his expenses if he would go to Jonesboro and buy it, and give him an opportunity to purchase it from him, and paid him $6 to cover his expenses; that the land was sold on the 19th of April at a commissioner's sale, and purchased by him at the price of $265, which he paid; that he purchased the land for himself, and never agreed to let the defendant have it at what he paid for it, or at any other price until he sold it to him ; that in the year 1885, the sheriff, at his instance, dispossessed the defendant; that Beard, the defendant, then rented the land for 1885, and paid him therefor $25 and a half of a bale of cotton; that he sold the land to the defendant, in May, 1886, for $500, and took his two promissory notes therefor, each for $250, payable,

respectively, eight and twenty months after date.    One of them has been paid, and $36 or $40 on the other.

Defendant testified:    That the plaintiff agreed to buy the land for him, and he was to return the amount paid and ten per cent. interest, and pay to plaintiff $60 for his trouble.    In the spring after he purchased the land, plaintiff wanted $400 for it.    When he put him out of the house in 1885, he had to pay rent in order to get possession.    After the crop was gathered, plaintiff asked $500 for the land, and he had to sign the notes or lose the land.    He did not sign them willingly.    He had receipts for $350 on his notes, but gave them to plaintiff when he returned the first land note.

Other evidence was adduced at the hearing to prove circumstances slightly corroborating the statements of both parties, and other matters in controversy, which we do not notice in this opinion.

The circuit court found that the defendant employed the plaintiff to purchase the land for him, and paid $60 for his services ; that the plaintiff was to pay for the land with his own money, but agreed that the sum advanced was to be repaid when the defendant became able to do so ; that plaintiff represented that he took title in his own name as security for the money, and collected $167.65 more than all the sums due for money loaned to buy the land and on the account sued on amounted to ; that he took advantage of the relation of trust subsisting between him and the defendant to sell the land at an exorbitant price, for which the defendant gave his notes ; and that the sale was inequitable, unconscionable, and fraudulent ; and rendered judgment in favor of the defendant against the plaintiff for $167.65 and all costs, and decreed that the sale of the land and notes sued on be cancelled, and that plaintiff convey the land to the defendant.

Is the decree of the court correct?

At the time plaintiff purchased the land at commissioner's sale, no relation of trust existed between him and the defendant. When he sold it for $500, the defendant was not deceived as to a single fact. He had a personal knowledge of every fact material for him to know. The only reason he gives for purchasing the land is, he had to sign the notes or lose the land. Is this a sufficient reason for setting aside the sale?

*Vick* v. *Shinn*, 49 Ark. 70, decides the question. In that case "the mortgaged chattels," says the court, "were in the debtor's possession. There was no circumstance or threat of the use of violence or force to take them. The debtor voluntarily met his creditor in the office of the attorney who held the notes for collection, to effect a settlement. He admitted a liability of about $300, but claimed a credit on the notes to the extent of the corn that was not delivered to him. A small credit was conceded, but less than he contended for, and less than the circuit court found that he was really entitled to. The mortgagee would not agree to his terms of settlement, and finally informed him that he would take possession of and sell the mortgaged property if he did not pay the full amount demanded. The mortgagee's attorney repeated the same thing to him. He protested throughout that the excess over the amount he was willing to pay was unjust, and that he did not owe it, but he agreed to pay the whole, and, after having time to arrange to raise the money, caused it to be paid, saying he did it to protect his property from sale, and that he would sue for and recover the excess over his just debt."

The court said "There was no compulsion, in a legal sense, in this. It was incumbent upon the mortgagee, before a legal sale of the mortgaged goods, to get possession of them, and, if this could not be done peacea-

bly, he must have resorted to the action of replevin for the purpose. But it is not shown that he had the power or opportunity to put his threat of seizing the property into execution against the will of the debtor, and a threat to enforce a demand by suit is not sufficient to create duress of goods. If there is in fact a cause of action when the threat is made, the plaintiff, by bringing suit, would only enforce a legal right; if there was no cause of action, or a demand for more than is due, the party threatened should exercise the ordinary degree of firmness which the law presumes every man to possess, and meet the issue of the unjust suit. One cannot be heard to say he had the law with him, but feared to meet his adversary in court. It is only when he has no chance to be heard that he can pay under protest and afterwards recover. * * * By proper defense to the action of replevin the plaintiff could have protected himself against surrendering his property without paying more than the mortgage debt. * * * Having chosen to make terms with his creditor, instead of pressing his rights when there was nothing to prevent him from so doing, he could not afterwards change position and complain that the terms were forced upon him. * * * A protest is of no avail, except in case of duress of some sort, and then it only tends to show that the payment was the result of the duress."

But it is said that the doctrine as to duress of goods has no application to real estate; that the rule is founded upon the movable and perishable character of personal property, and the uncertainty of a personal remedy against the wrong-doer; and the reason of the rule is wholly inapplicable to real estate.* But we do not undertake to say that the rule has no application to

---

* *Fleetwood* v. *City of New York*, 2 Sandf. 475; *Edwards* v. *Handley*, (Ky.) 3 Am. Dec. 745; Sheppard's Touchstone, p. 61.

real estate under any circumstances, but that *Vick* v. *Shinn* shows that, if applicable to any case in which land is involved, it has none to the one before us. Here Beard was in possession of the land in controversy. He had full and adequate remedies against any action or course Shirey might take.* No threats, force, or intimidation of any kind appears to have coerced him into the making of any contract. He had a controversy with Shirey as to facts. They met for the purpose of settling it, as they had a right to do, and did settle it by Beard ratifying Shirey's purchase and recognizing his right to the land, and Shirey selling it to him for $500 and giving him time in which to pay for it, and taking his notes for the purchase money. For many years, Beard voluntarily made payments on these notes. Seven years passed before he undertook to resurrect the controversy which they had buried in their settlement, and not then until this action was brought. He was willing for it to remain settled so long as he was permitted to make payments at will; and we think it should not be disturbed, but be allowed to continue to rest in peace.

The decree of the circuit court is, therefore, reversed, and the cause is remanded, with directions to the court to take an account between the plaintiff and defendant, and, if it finds anything due on the purchase money, to foreclose the lien of the plaintiff on the land to pay the same, and for other proceedings not inconsistent with this opinion.

---

* *Mulholland* v. *York*, 82 N. C. 510; *McNair* v. *Pope*, 100 N. C. 404; *Brittin* v. *Handy*, 20 Ark. 381; Perry on Trusts, sec. 171.