WILSON v. BROWN.

(Filed March 16, 1904).

1. EXECUTORS AND ADMINISTRATORS—*Evidence—Execution.*

The evidence in this case to sell land for assets, in which the defendant pleaded a judgment lien and execution from a certain county, is sufficient to show that the execution was issued as claimed.

2. ADVERSE POSSESSION—*Execution—Deeds—Color of Title.*

The possession of a person whose land is sold under execution and deed made to the purchaser, is adverse to the purchaser, but the original deed is not color of title after the sale.

3. EVIDENCE—*Trusts—Parol—Execution—The Code, secs. 248, 260, 268, 504.*

The proof to establish that the purchase of property at sheriff's sale on execution was for the use of the judgment debtor continuing in possession must be strong, clear, and convincing.

4. ADVERSE POSSESSION—*Remainders—Estates.*

Adverse possession cannot be predicated of possession of real property by grantees of the life-tenant, as against the remaindermen, during the life of the life-tenant.

WALKER and DOUGLAS, JJ., dissenting in part.

ACTION by H. H. Wilson against J. W. Brown and others, heard by *Judge Frederick Moore* and a jury, at November Term, 1903, of the Superior Court of PITT County. From a judgment for the defendants the plaintiff appealed.

*Skinner & Whedbee* and *Fleming & Moore,* for the plaintiff.

*Y. T. Ormond,* for the defendants.

CONNOR, J.   The plaintiff, administrator of B. J. Wilson, filed his petition against the defendants, heirs at law, etc., for the purpose of procuring license to sell certain real estate, of which he alleged his intestate was the owner at the time of his death, to make assets, etc.   The petition includes two tracts of land: one "known as the homestead of B. J. Wilson," etc., the other "known as a part of the John S. Brown land, lying on the east side of the Greenville and Washington road," etc.   The petition contained the necessary averments to entitle the plaintiff to relief.

The defendant, G. C. Edwards, filed an answer admitting the material averments and further alleged that he and his wife had recovered in the Superior Court of Greene County, on the first day of October, 1889, a judgment against the plaintiff's intestate, which was duly docketed in Pitt County.   That an execution thereon had issued from the Superior Court of Greene County, and the homestead of the defendant therein duly allotted.   That said judgment remained unsatisfied and constituted a lien upon that portion of the land described in the complaint known as the "homestead."   To this answer the plaintiff filed a reply admitting the recovery of the judgment.

The second paragraph of the reply is as follows: "That it is denied on information and belief that execution on said judgment was properly and lawfully issued from the Superior Court of Greene County, and the homestead legally and regularly allotted under the same, and it is specifically averred that said execution was irregular and void." The plaintiff pleaded the bar of the statute.

The defendants, B. W. Brown and others, by their guardian, filed an answer denying that the plaintiff's intestate was at the time of his death the owner of the tract of land on the east side of the road, etc.   They further alleged that they were the owners in fee of said land.

134——26

To this answer the plaintiff filed a reply denying the affirmative allegations, and pleading the twenty and seven year statutes of limitation in bar of their claim, etc. The plaintiff further alleged that at a sale of said land made by the Sheriff, F. W. Brown, the father of the defendants purchased the same upon a parol trust to hold the title to the use of plaintiff's intestate. That he remained in possession, paying taxes and receiving the rents of said land, for more than twenty years and until his death. The cause was, upon issues made by the pleadings, transferred to the civil issue docket for trial.

In regard to the defendant Edwards, the Court submitted the issue upon the statute of limitations. The defendant introduced the Clerk of the Superior Court of Pitt, who produced the record showing transcript of judgment from Greene, docketed in Pitt, October 5, 1889. The docket showed the entry, "*Fi. fa. issued* October, 1889. Homestead appraised and set off and return made October 14, 1889." He next introduced the record of the return of the Sheriff showing allotment of homestead and personal property exemption, under execution on judgment of *G. C. Edwards and wife v. B. J. Wilson,* dated October 14, 1889. (It did not appear from said return from what county the execution was issued). The defendants introduced a deed from the Sheriff of Pitt County to F. W. Brown, in which a sale under two executions issued from the Superior Court of Greene County, upon judgments in favor of *G. C. Edwards and wife v. B. F. Wilson, Julia C. Dixon, Executrix, v. B. F. Wilson,* is recited. The levy is recited as made on October 14, 1889. This was all the evidence in regard to the controversy upon the lien of the Edwards' judgment. His Honor instructed the jury that if they believed the evidence they should answer the issue "No." Plaintiff excepted.

We concur with the opinion of his Honor. There was uncontradicted evidence amply sufficient to show that the execution issued on the Edwards' judgment from the Superior Court of Greene County. It is very doubtful whether the answer sufficiently denied the averment. We think that upon a proper construction of the paragraph in the answer it may well be said that it was not denied. From any point of view his Honor correctly instructed the jury. The Court submitted the following issue to the jury: "Did Frank W. Brown take the legal title to the tract of land described in the Sheriff's deed introduced for the use and benefit of B. J. Wilson?"

The plaintiff tendered in addition an issue directed to the inquiry whether plaintiff's intestate had been in the open and adverse possession of the land in controversy for more than twenty years, also in regard to adverse possession under color of title for more than seven years. His Honor declined to submit either of these issues and the plaintiff excepted. His Honor's ruling was correct. The possession of plaintiff's intestate could not possibly have been adverse to Dr. Brown for twenty years, for the manifest reason that the Sheriff's deed was executed March 7, 1890, before which time Dr. Brown had no right of action or right of entry. The plaintiff's intestate prior to that time had a perfect title to the land.

In regard to the second issue tendered, there was no evidence that the plaintiff's intestate had possession of the land after March 17, 1890, the date of the Sheriff's deed, under color of title. We have no difficulty in holding, upon the authorities, that, in the absence of any explanation, the possession of plaintiff's intestate after the right of action accrued to Dr. Brown, was adverse to him and if continued for twenty years would have ripened into perfect title. *Scarborough v. Scarborough,* 122 N. C., 234. The deed

under which plaintiff's intestate became the owner of the land could not constitute color of title after the execution of the Sheriff's deed.

In *Johnson v. Farlow,* 35 N. C., 84, *Pearson, J.,* says: "McCracken, after his deed to the lessor, had no color of title, and the adverse possession which he held was naked. It is absurd to suppose that the deed under which he had originally acquired the land could serve his purpose as color of title, after he had passed all of his estate, interest and claim under it to the lessor. Color of title is *something* which purports to give title, but he had nothing of the kind The deed to him was *functus officio,* except as one of the *mesne* conveyances of the lessor. If McCracken had taken a deed from a third person, that would have been color of title, and seven years' adverse possession under it would, in the language of the cases, 'have ripened it into a perfect title,' thus originating that which did not exist at the date of his deed, for the averment of this new title would not be inconsistent with the admission which he was bound to make, that his deed had passed the title to the lessor."

Brown's legal title was but a continuance of the title of the plaintiff's intestate, the defendant in the execution. After the sale and execution of the Sheriff's deed, the character of the possession retained by plaintiff's intestate was open to explanation. *Ruffin v. Overby,* 88 N. C., 369; *Bryan v. Spivey,* 109 N. C., 57; *Boomer v. Gibbs,* 114 N. C., 76.

His Honor properly refused to submit either of the plaintiff's issues tendered. His Honor instructed the jury in regard to the issue tendered: "That if the plaintiff had satisfied them by strong, clear and convincing evidence that Dr. F. W. Brown took the legal title to the tract of land described in the Sheriff's deed introduced, for the use and benefit of B. J. Wilson, they should answer the third issue 'Yes,' and that unless the plaintiff had satisfied them by

strong, clear and convincing evidence that Dr. F. W. Brown took the legal title to said tract of land for the use and benefit of B. J. Wilson, they should answer the third issue 'No.'" The instruction was in accordance with the decisions of this Court. *Smith, C. J.,* in *McNair v. Pope,* 100 N. C., 404, says: "But to engraft such a trust upon a legal estate, the proof of its formation should be strong and convincing." In *Summerlin v. Cowles,* 101 N. C., 473, it is said: "To attach a trust to a legal estate by parol, or to convert a deed absolute in form into a security merely, and perhaps in other cases invoking the exercise of equitable judicial functions for relief, more proof is required than that which preponderates and governs in the trial of ordinary questions of fact." In *Cobb v. Edwards,* 117 N. C., 244, *Avery, J.,* says: "Where the Judge is not at liberty to say that there is no evidence of the kind required by the rule of law prescribed in such cases, it is his duty to tell the jury that the law requires clear, strong and convincing proof to show the agreement as well as the subsequent acts or admissions, and that it is their province to say whether that offered does so convince them of its truth."

This, and other cases in our Reports, sustain his Honor's charge to the jury. While the testimony in regard to the inadequate price paid for the land, the continued possession of the judgment debtor, payment of taxes, the reduction of the mortgage indebtedness upon the land, the relation between himself and the purchaser might well have justified the jury in finding that Dr. Brown held the title upon some trust or understanding between himself and the judgment debtor, these questions are peculiarly within their province, and in the absence of any error in the instructions by which they were guided, we are not permitted to question their verdict. Upon careful examination of the entire record, we find

No Error.

WALKER, J., dissenting as to homestead tract. The case shows that the defendant G. C. Edwards and his wife recovered a judgment in the Superior Court of Greene County on the first day of October, 1889, against B. J. Wilson, the intestate of the plaintiff, and the said judgment was docketed in the Superior Court of Pitt County on the same day. The plaintiff brought this proceeding for the purpose of selling the land of his intestate to pay debts, and in his petition he asks for the sale of the land known as the "homestead" tract, which is on the west side of the road and contains about 100 acres, and also of the land known as the "Brown" tract, lying on the east side of the road, it being the excess of the homestead and containing about 220 acres. An execution was issued to the Sheriff of Pitt County and levied on the said 320 acres of land. The homestead was set apart on October 14, 1889, and the excess, described in the pleadings as containing 220 acres and in the Sheriff's deed as containing about 100 acres, was sold and bought by F. W. Brown, father of the defendant B. W. Brown, and others. The plaintiff alleges that this particular purchase was made by Brown at the nominal sum of $5 for the use and benefit of his uncle, B. J. Wilson, defendant in the execution, and upon the parol promise or trust that he would hold the same for his use and benefit, and upon the repayment of the sum disbursed by him that he would convey the land to his said uncle, the plaintiff's intestate.

I fully concur in the opinion of the Court, so far as it relates to this part of the case, but I do not concur in its decision as to the disposition of the fund arising out of the sale of the homestead tract. The defendant G. C. Edwards, who answers for himself and as administrator of his deceased wife, alleges that execution issued on his judgment from the Superior Court of Greene County to the Sheriff of Pitt County, and that the homestead was regularly

allotted; and the plaintiff in his reply avers that no execution was ever lawfully and properly issued from the Superior Court of Greene County, nor was the homestead ever regularly or legally allotted under the same, and he therefore further avers that the Edwards' judgment is barred by the statute of limitations, as the attempted allotment of the homestead was void and of no effect and did not therefore suspend the operation of the statute and prevent the bar. I think, though my brethren do not, that the allegation of the answer that execution had issued from Greene County is sufficiently met and denied by the reply. In the construction of a pleading for the purpose of determining its legal effect, its allegations shall be liberally construed with a view to substantial justice between the parties. The Code, section 260. We should remember that the subtle science of pleading heretofore in use is not merely relaxed but in a large measure abolished by The Code, and the rule of the common law that every pleading must be construed against the pleader has been reversed by the present system, and we must try to ascertain the intention of the pleader, however it may be expressed, and without putting a too strained and technical construction upon his words. *Moore v. Edminston,* 70 N. C., 510; *Stokes v. Taylor,* 104 N. C., 394. As said by *Clark, J.,* in the last-cited case, "when the defect is in the form rather than in the substance, the proper method of correction is not by demurrer, nor yet by excluding evidence at the trial, but by motion before the trial to make the averment more definite." *Buie v. Brown,* 104 N. C., 335; *Purcell v. Railroad,* 108 N. C., 414, 12 L. R. A., 113. The denial in this case was quite as sufficient to raise an issue as were the allegations and averments in *Moore v. Edminston* and the other cases cited. But it was not necessary that the plaintiff should reply to this allegation, as the new matter in the answer, not being a counter-

claim, "is to be deemed controverted by the plaintiff as upon a direct denial or evidence, as the case may require" (The Code, section 268), the Court not having ordered the plaintiff to reply thereto, section 248. An issue having been raised, how stood the proof? It may be conceded that the recitals in the Sheriff's deed are *prima facie* evidence not merely of the sale but also of the judgment and execution and of all facts necessary to be recited, in order to show his power and the correct execution of it with reference to the sale, and that this is so even when the party claiming under the deed is the plaintiff in the judgment. *Rollins v. Henry,* 78 N. C., 342; *Curlee v. Smith,* 91 N. C., 172, and yet, the fact in this case is that, as to the homestead tract, there was no sale by the Sheriff, and therefore the recital could not be evidence of an allotment, nor even of the issuing of the execution under which it is alleged the allotment was made. The authorities do not fit the case. The recitals are *prima facie* evidence for the purpose of supporting the sale only, and there was no sale of this tract. To permit the execution to be evidence of the issuing of the execution in this case, would violate the well-settled rule that a party upon whom rests the burden of proving a fact must offer the best attainable evidence of it. In *Rollins v. Henry, supra,* the Court by *Rodman, J.,* says: "The return to an execution is ordinarily the best evidence of a levy and sale under it. But when the execution has not been returned to the Clerk's office, and it, with any return on it, has been lost or destroyed, *and it is proved otherwise than from the recitals that there was a judgment and execution* (italics mine), the recital in a Sheriff's deed is *prima facie* evidence of the levy and sale, they being official acts of the Sheriff, even although the sale was not a recent one." But assuming, for the sake of the argument, that the recitals were evidence of the issuing of the execution, they were

only *prima facie* evidence and open to rebuttal. I think there was sufficient testimony to be submitted to the jury for that purpose. There is this entry on the execution docket of the Superior Court of Pitt County: "*Fi. fa.* issued October, 1889. Homestead appraised and set off and return made October 14, 1889." It is not the duty of the Clerk of the Court of the county, whose Sheriff has received an execution issued from another county, to note on his docket the fact that the execution has issued. He is required to make an entry in regard to the homestead allotment when it is returned to him. Code, section 504. If there are any payments on the judgment, they are certified to him by the Clerk of the Court where the judgment was taken, and must be entered on his docket. The execution goes directly from the Clerk of the Court in which the judgment was rendered, to the Sheriff of the county where the defendant's land is situated and where the judgment has been docketed, and the Clerk of the latter county has nothing to do with it. His judgment roll and docket are not required to show anything in connection with it, except the credits on the judgment and the return of the homestead allotment, and the latter is required, also, to be returned by the officer having the execution to the Clerk of the Court where the judgment was rendered. Acts 1887, p. 515. The entry therefore of the Clerk of Pitt Superior Court was some evidence that the execution had been issued from that Court, for, if it had been, his duty would have been to make just such an entry as he did make. Whether this was sufficient to rebut any evidence introduced by the defendant was a question for the jury to decide, and not for the Judge. All such matters should be left to the triers of the facts appointed for the purpose of deciding such issues between the parties, and should not be decided as matters of law. The entry on the docket in Pitt County

was certainly as reliable as the recitals in the Sheriff's deed, and those recitals constituted all of the defendant's evidence. I do not understand why the defendant did not introduce the original execution, if one ever issued from the Superior Court of Greene County; if it had been lost, he could have proved it had been issued by the entries on the Clerk's docket in Greene County or by the Sheriff who acted under it. The fact that no such evidence was offered tended greatly to weaken the defendant's case and to strengthen that of the plaintiff.

DOUGLAS, *J.*, concurs in the dissenting opinion.