ODELL & KLEINER *v.* HEINRICH.

Opinion delivered April 19, 1920.

PAYMENT—RECOVERY WHERE VOLUNTARY.—Where the owners of land voluntarily paid costs and attorney's fee in compromise and settlement of a lien on the land, they will not be permitted to recover the same upon the theory that they were not legally liable therefor, as one can not be heard to say that he had the law with him, but feared to meet his adversary in court.

Appeal from Arkansas Circuit Court, Northern District; *W. B. Sorrells,* Judge; affirmed.

*O. M. Young* and *Harry E. Meek,* for appellants.

1.   The offer of Odell & Kleiner did not contain any promise to pay the court costs and attorney's fees in addition to the $1,400. . The telegram did not expressly nor impliedly show any such promise. The costs and fees were liens under the decree, and there could be no satisfaction of the decree until these liens are discharged. Kirby & Castle's Digest, §§ 463, 5187, 5189; 135 Ark. 22. Under the offer there was no agreement to pay the costs and attorney's fees. 61 Tenn. 141. The assignor of a decree impliedly warrants his title. 23 Cyc. 1350.

2.   Appellants, having knowingly paid the disputed items, can recover the amounts thus paid. Where one pays money he does not owe under the circumstances of this case, the payment is not *voluntary* but *compulsory* or *under duress,* and it may be recovered. 9 Cyc. 443; 30 *Id.* 1303; 2 L. R. A. (N. S.) 374. The amounts paid under protest were not to Heinrich but to *third parties* entitled to receive the same and the rule as to *voluntary* payments does not apply.

3. The agreement on the part of Heinrich was not void for want of consideration. 84 Hun 325; 32 N. Y. Supp. 373.

*Clyde E. Pettit,* for appellee.

1. If there was any ambiguity in the contract, it should be resolved against appellants, but there surely is none. It is plain that Heinrich thought he was accepting an offer of $1,400 for his interest in the decree, and the court costs and attorney's fees were to be paid by appellants. A principal who confers an ambiguous authority upon an agent is bound by the construction placed upon the authority by the agent in good faith and the party dealing with him. There was no duress or compulsion. 98 Am. Dec. 382.

2. The court sitting as a jury found that Heinrich did *not* contract to take $1,400 and pay the costs and attorney's fees, and the finding is justified by 61 Tenn. 141. A voluntary adjustment of a matter in dispute or compromise of disputed matter terminates the matter finally, even where there is a protest. 46 Ark. 217; 74 *Id.* 270. There were no allegations of fraud or concealment in the complaint. Voluntary payments can not be recovered. 130 Ark. 520; 102 *Id.* 152; 86 *Id.* 175; 18 L. R. A. (N. S.) 124; 234 Ill. 635; 85 N. E. 200. The lower court found there was no duress. The compulsion or duress must furnish the motive for making the payment. 18 Cal. 265; 70 Am. Dec. 176; 234 Ill. 535; 85 N. E. 200; 18 L. R. A. (N. S.) 124; 107 Ark. 24; 21 R. C. L. 145. The motive here did not proceed from the alleged compulsion, *supra,* but from a third party. 107 Ark. 24; 46 *Id.* 363; 65 *Id.* 157.

McCULLOCH, C. J. Appellee obtained in the chancery court of Arkansas County two decrees for the foreclosure of vendor's liens aggregating the sum of $2,225.11, on certain tracts of real estate in that county. The liens were declared by the court to be in conjunction with other liens of like nature in favor of other claim-

ants, all to be paid *pro rata* out of the proceeds of the sale ordered to be made by the commissioner. The cost of the foreclosure, including a fee for the commissioner and the expenses of advertising the sale, amounted to $142.70, and there was a fee of $140 due to the attorneys for appellee for services rendered in procuring the foreclosure.

The legal title to the lands on which the liens rested was in one Johnson as trustee for appellants, Odell & Kleiner. Appellee resided in California, and was represented in the foreclosure suit by attorneys in Arkansas County. After decrees were rendered appellee executed a power of attorney to one Enders, empowering the latter to direct a foreclosure sale by the court commissioner and to purchase the lands at said sale for appellee. Appellants were negotiating with one Stroh for the sale of the lands, and they applied to Enders as the agent of appellee to open negotiations for the extinguishment of appellee's claim against the lands. They submitted an offer to appellee contained in a telegram sent by Enders to appellee in the following words:

"Have offer fourteen hundred dollars cash for your interest in Odell Land Company matter. Would recommend acceptance of this as could not get more in case of sale. This would wind the entire matter up. Answer wire."

The message was directed to appellee at his home in California, and was signed by Enders. This was on August 11, 1917, and two days later appellee sent to Enders by telegraphic message the following reply:

"Accept fourteen hundred if you can do no better."

Appellants knew the contents of the message of Enders to appellee and were informed by Enders of the contents of appellee's reply message, and Enders indicated to appellants the acceptance of the offer of $1,400. There had been no sale by the commissioner, and appellants proceeded in the negotiations with Stroh for the sale of the land, and closed the deal with the latter by contract. Later appellants offered to pay appellee the sum of $1,400

for full release and satisfaction of the decrees in appellee's favor, but appellee refused to give a release from the decrees except upon payment of the amount of costs due in the case and also the amount due the attorneys as fees for their services. Appellants paid the costs and attorneys' fees in addition to the amount of $1,400 paid to appellee and the decrees were released, but appellants made the payments under protest, and now sue to recover the amount paid in satisfaction of the costs and attorneys' fees on the ground that the payment of the same was under compulsion by reason of the fact that it was necessary to free the lands from appellee's claim in order to consummate the deal with Stroh, to the consummation of which they were then obligated.

At the time the payment was made there was then, as now, a dispute between the parties as to the proper interpretation of the contract. Appellants claim that, under the contract as evidenced by the two telegrams, they were to have a complete satisfaction of the decrees on the payment of the sum of $1,400, but, on the other hand, the contention of appellee is that under the contract he was to receive the sum of $1,400 net to him for a release of his "interest" in the matter—in other words, that he would merely quitclaim and release his rights on payment of $1,400. The costs had not been paid at that time.

In the face of this dispute between the parties as to the effect of the contract, appellants yielded and paid the amounts claimed in order to procure a release of the decrees.

Without undertaking to interpret the contract so as to settle that dispute between the parties, we hold that the payment made by appellants was voluntary, and ended the controversy, which cannot again be renewed. There was no fraudulent concealment of facts which induced the payment, nor was there any duress which would afford grounds for disregarding the payment. There are decisions of this court which settle the case against appellant's contention, holding that the payment was, under the

circumstances, not one made under duress but was vol-
untary, and that the controversy cannot be again re-
opened. *Vick* v. *Shinn,* 49 Ark. 70; *Shirey* v. *Beard,* 62
Ark. 621; *Satchfield* v. *Laconia Levee District,* 74 Ark.
270; *Tancred* v. *First National Bank of Fort Smith,* 130
Ark. 520.

In the case of *Vick* v. *Shinn, supra,* the court tersely
said that ''one cannot be heard to say that he had the law
with him, but feared to meet his adversary in court.''
This statement applies to the present case, for appel-
lants owned the land and were not compelled to yield
to appellee's contention as to the proper interpretation
of the contract, if erroneous. The fact that they were un-
der obligations to close the deal with Stroh does not con-
stitute such duress as would justify the courts in disre-
garding the settlement of the controversy.

Affirmed.